UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH R. ROBICHAUD,<br><br>               Plaintiff,<br><br>  -vs-<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,[1]<br><br>               Defendant. | NO.   CV-11-0069-WFN<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Before the Court are cross-Motions for Summary Judgment (ECF Nos.15 and 19). Attorney Maureen Rosette represents Plaintiff Robichaud; Special Assistant United States Attorney Pamela DeRusha represents Defendant. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff filed a claim on March 20, 2007, alleging an onset of disability as of January 16, 2006. The claim was initially denied on June 21, 2007, and upon reconsideration on December 6, 2007. Plaintiff was granted a hearing on May 6, 2009, before Administrative Law Judge (ALJ) Chester. Plaintiff and vocational expert Moreland testified at this hearing.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 1

In his May 28, 2009, decision, the ALJ found Plaintiff was not disabled. This appeal followed. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

*Id.*

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 2

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 42 years old at the time of his alleged disability onset. He completed high school and has worked in the past as a sign reader, molding machine operator, assembler, electronic supervisor and solderer.

## ADMINISTRATIVE DECISION

At step one, the ALJ determined that Plaintiff performed some part time work after January 16, 2006, but the work did not constitute substantial gainful employment. At step two, the ALJ concluded that Plaintiff had the following severe impairments: right shoulder strain, lumbar strain, and degenerative disk disease lumbar and cervical spine. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments described

at 20 C.F.R. Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526).

At step four, the ALJ found that Plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: occasionally climb ladders/ropes/scaffolds, do occasional stooping and crawling; and occasional overhead reaching bilaterally" (ECF No. 10-2 at 21). Notably, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they are inconsistent with the residual functional capacity assessment.

At step five, the ALJ considered Plaintiff's residual functional capacity, age, education, and work experience. The ALJ concluded that Plaintiff's past work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. The ALJ found that Plaintiff retained the residual functional capacity to perform past relevant work as a sign reader, molding machine operator, assembler, electronic supervisor, and solderer.

## ISSUES FOR REVIEW

The Plaintiff presents the following issues with respect to the ALJ's findings:

1. Did the ALJ err at step three by concluding that Plaintiff's impairments did not meet or equal Listing 1.04?

2. Did the ALJ properly consider and address the medical evidence?

**1. Did the ALJ err at step three by concluding that Plaintiff's impairments did not meet or equal Listing 1.04.**

In his Motion for Summary Judgment, Plaintiff briefly argues that the ALJ erred at his step three analysis when he failed to find Plaintiff's impairments met or equaled the listing in 20 CFR Part 404, Subpart P, Appendix 1, Listing1.04. 1.04 states:

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 4

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>   A. Evidence of nerve root compression characterized by *neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss* (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
>   or
>
>   B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
>   or
>
>   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* (emphasis added).

The Court begins by noting that the ALJ expressly considered whether Plaintiff's impairments met or equaled Listing 1.04. Specifically, the ALJ concluded that Plaintiff failed to meet Listing 1.04 because the record does not demonstrate compromise of a nerve root or spinal cord with additional findings in subsection A, B or C.

As stated *supra*, Plaintiff has the burden of proof at step three. When an impairment meets or equals a listed impairment there is no consideration of age, education and work experience.[2] "It is not enough for an applicant to show he has a severe impairment that is

---

[2] 20 C.F.R. § 404.1520(d) states: "When your impairment(s) meets or equals a listed impairment in appendix 1.

If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without

one of the listed impairments to find him *per se* disabled. An applicant must show that his impairment meets or equals the severity . . . requirements for the applicable impairment." *Young v. Sullivan,* 911 F.2d 180, 181 (9th Cir. 1990).

Plaintiff argues that the ALJ erred because Dr. Demakas' evaluation showed that Plaintiff has anatomic distribution of pain, limitation of motion of the spine, and motor loss, as well as positive Waddell signs. Specifically, on August 14, 2007, Dr. Demakas found spinal stenosis at L4-5 and left L5 radiculopathy, and Waddell's testing was postive 3/5. A later MRI showed congenital narrowing of the spinal canal as well as foraminal narrowing at C5-6.

Defendant notes that Plaintiff's argument focuses on alleged evidence of nerve root compression, characterized by the symptoms noted above (anatomic distribution of pain, limitation of motion of the spine, and motor loss). However, after the August 14, 2007, appointment, Plaintiff underwent a limited bone/SPECT scan of the lumbar and cervical spine. The scan images, as verified by Dr. Demakas, detected only mildly increased activity at L4-5 likely related to mild degenerative disc disease (TR 550). The activity in the C5-6 region was also consistent with degenerative changes. Defendant argues that it is significant that Dr. Demakas only recommended conservative care and saw nothing that "requires neurosurgical intervention at this time" (TR 552). Defendant contends that the ALJ did not err and that the medical evidence does not support a finding that Plaintiff's condition met or equaled the requirments of Listing 1.04.

The Court agrees with Defendant and concludes that the medical facts do not establish an impairment which is severe enough to find a *per se* disability.[3] The Court concludes that

---

considering your age, education, and work experience."

[3]The Court further notes that Plaintiff repeatedly relies on the fact that Dr. Demakas found positive Waddell's testing (3/5). Plaintiff alleges that this buttresses his conclusion

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 6

the ALJ did not err at his step three analysis when he failed to find Plaintiff's impairments met or equaled the listing in 20 CFR Part 404, Subpart P, Appendix 1, Listing 1.04.

**2.    Did the ALJ properly consider and address the medical evidence?**

Plaintiff also argues that the ALJ failed to properly consider and address the medical evidence in Plaintiff's case. Specifically, Plaintiff focuses on the medical opinions of Dr. Demakas, Dr. Van Gerpen and Dr. Lahtinen (ECF No. 16 at 12). The Court will address each in turn.

**a.  Dr. Demakas.**

Plaintiff notes that the ALJ gave significant weight to Dr. Demakas' opinion, and that Dr. Demakas on August 14, 2007, did not think it was reasonable for Plaintiff to go back to work and that on September 17, 2007, Dr. Demakas still did not recommend that Plaintiff return to work (TR 549, 552).

Defendant responds that the ALJ met his burden by setting out a detailed and thorough summary of the facts and conflicting evidence. Defendant further contends that it is clear that the ALJ did not accept Dr. Demakas' statement that Plaintiff should not return to work as Dr. Demakas' statement was incongruous with the fact that Dr. Demakas found nothing of significance to support Plaintiff's subjective complaints. The Court agrees with the Defendant. In his opinion, the ALJ addressed Dr. Demakas and his medical opinions as follows:

> John Demakas, M.D. reviewed the claimant's lumbar and cervical spine bone scans as part of claimant's worker's compensation claim and determined that increased activity in the areas were related to degenerative changes and that only conservative care through a primary care physician was required. Dr.

---

that he meets Listing 1.04. Though this issue does not effect the Court's conclusion, it is the Court's understanding that a positive Waddell test does not support the conclusion of physical back injury. Rather, it indicates non-organic or psychological based pain or malingering.

> Demakas determined that there was nothing apparent in the bone scans to indicate neurosugrical intervention and he was unable to find anything which would explain claimant's complaints of numbness in his left leg.

ECF No. 10-2 at 24. The Court concludes the ALJ properly considered and addressed Dr. Demakas' medical evidence and opinions.

### b. Dr. Van Gerpen

Plaintiff also focuses on Dr. Van Gerpen's opinions which were accorded significant weight by the ALJ. Plaintiff states that Dr. Van Gerpen never released Plaintiff to do anything more than four hours of work per day, five days a week at a light-work level.

In his opinion, the ALJ addressed Dr. Van Gerpen and his medical opinions as follows:

> Royce Van Gerpen, M.D. treated the claimant between May and August 2007 as part of his worker's compensation claim for complaints of neck and shoulder pain and numbness in his left leg. Although Dr. Van Gerpen observed abnormal head and neck motion by the claimant, which were also observed by the undersigned during the hearing, a neurosurgical consultation provided no explanation for this and no further evaluations or treatments of the claimant's head and neck areas were recommended. In August 2007, Dr. Van Gerpen indicated that the claimant had repetitively appeared at appointments with significant and ongoing intoxication despite reporting the he was not consuming alcohol. Repeated breath testing had documented this abnormality. Dr. Van Gerpen opined that clamant's complaints concerning numbness in his leg without any other explanation for its cause were most likely related to his alcoholism. Dr. Van Gerpen also explained that the claimant's inability to progress and return to full duty work were not due to the residuals of his work-related injury.

ECF No. 10-2 at 24. The Court notes that Plaintiff's argument takes Dr. Van Gerpen's medical records somewhat out of context. Specifically, Dr. Van Gerpen's April, 2007 record cited by Plaintiff states:

> We reviewed and discussed the light-duty jov analysis is [sic] been provided by the employer. This is a position where he can sit and stand at his choice and handout brochures. Maximum weight allowance would be 2 pounds. I believe that he is able to do this. The patient adamantly states that he is not able to be up and about this amount and that he will go find another doctor to get a second opinion. . . .
>
> Plan: . . . Given clearance to do light duty work at 4 hours per day 5 days per week for two weeks then advancing to 5 hours per day 5 days per week for the next two weeks.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8

1   TR 369.  Further, in June of 2007, Dr. Van Gerpen recommended Plaintiff remain on light

2   work at 4 hours per day (TR 539).  In August of 2007, Dr. Van Gerpen recommended that

3   Plaintiff continue working and gradually increase his hours (TR 532).  The Court finds no

4   errors by the ALJ in his consideration of Dr. Van Gerpen's medical opinions and records.

### c. Dr. Lahtinen

Finally, Plaintiff argues that the ALJ erred by failing to consider Dr. Lahtinen's opinions and failing to give specific and legitimate reasons supported by substantial evidence for his rejection of Dr. Lahtinen's opinion.  Defendant properly points out that a doctor's opinion on disability is not a legal opinion and that such determinations are reserved for the Commissioner.

In the ALJ's opinion, the ALJ addressed Dr. Lahtinen and his medical opinions at some length.  The ALJ stated, in part,

> In any event, there are no records here to document visits between 2007 and 2009, despite the claimant's statement that he sees Dr. Lahtinen every month. The undersigned has considered Dr. Lahtinen's opinions, but without any medical records to document the diagnosis and treatment provided to the claimant over the last two years to support the opinions, they are accorded little weight.  Moreover, the undersigned concludes that Dr. Lahtinen's opinions are inconsistent with the well-supported assessments of other examining physicians, discussed below, and the opinion of state agency medical consultants, both of which are given greater weight.

ECF No. 10-2 at 23.  The Court concludes that the ALJ properly accorded little weight to Dr. Lahtinen's opinions that lacked medical records and that were inconsistent with the well-supported assessments of other examining physicians and medical consultants.

In sum, the Court finds no errors in the ALJ's specific and cogent reasons for resolving conflicts in medical opinions.  The ALJ's rationale was detailed and specific and his findings were based in substantial evidence.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.  Accordingly,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 9

**IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, filed October 10, 2012, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, filed November 26, 2012, **ECF No. 19**, is **GRANTED.**

The District Court Executive is directed to file this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED.**

**DATED** this 15th day of July, 2013.

07-08-13

        s/ Wm. Fremming Nielsen
        WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 10